## THE STATE OF MONTANA, EX REL. C. B. NOLAN, ATTORNEY GENERAL, PLAINTIFF, *v.* T. C. MARSHALL, ET AL., AS MEMBERS OF THE STATE ARID LAND GRANT COMMISSION, DEFENDANTS.

[Submitted Feb. 14, 1898.  Decided Feb. 28, 1898.]

*Arid   Land   Commission—Powers—Railroad   Grant—Con-
tracts—Bonds—District Numbers.*

1. By the Carey act and acts amendatory (Acts Aug. 18, 1894, and June 11, 1896), the
United States conditionally granted arid lands to Montana.  To make the grant
available, the arid land act (Sess. Acts 1897, p. 180), amending Political Code, pt. 3,
Art. 2, tit. 8, created the state arid land commission.  Section 3532 authorizes the
commission to enact such rules for its government, and the carrying into effect of the
act, as may seem just; and Section 3533 authorizes it to take all steps necessary to
comply with the conditions of the act, "to the end that the state may receive the
full benefit and advantage accruing through or by the terms of any congressional
action." *Held*, that the only limitation imposed on the commission is that its acts
must be for the benefit of the state.

2. The commission selected a large body of land for the purpose of reclaiming it under
the Carey act, and designated it as "District No. 1."  The district was within the
limits of the grant of the Northern Pacific Railroad Company, the company owning
each alternate section, to which the state could not acquire title.  The lands were all
arid.  The commission had adopted a resolution that, where there was more than
enough water to irrigate the lands selected, any person might contract, with
the party selected by the commission to construct the state canal, to ex-
tend such canal for conveying to his lands such excess water, the addi-
tional expense being borne by such party.  The commission proposed to contract
for a canal of sufficient capacity to irrigate the lands to which the state could ac-

quire title, and to contract with the Northern Pacific Railroad Company, that that company would contract with the commissioners' contractor to so enlarge the canal as to furnish enough water to irrigate the whole district. *Held*, that the commission was authorized to make the proposed contract with the railroad company, if by its terms the rights of the state to construct, control and maintain ditches and canals, and a lien on all the property allowed by law, were fully preserved.

3. The Carey act and the arid land act having been enacted with full knowledge that the state could only acquire title to each alternate section of the arid lands in the state which lie within the limits of the Northern Pacific land grant, it must have been contemplated that the state might reclaim the alternate sections.

4. Section 3536 (Arid Land Act) provides for the issuing of bonds in series, "each series to be used to reclaim the lands of a certain district," each district and its bonds to bear a distinct number. Section 3541 provides that such bonds shall be made "a lien upon and charged against all lands embraced in the district for the reclamation of which such bonds are issued, * * * a first lien upon all water rights and improvements and upon the entire plant connected with such district," etc. *Held*, that, with reference to districts where only alternate sections were reclaimed, the commission could issue bonds specifying on their face that the lien thereof should attach only to lands to which the state might acquire title under the Carey act and the canal and water rights appurtenant thereto.

5. It is further provided (Section 3543) that the State Treasurer shall keep an account with each district, etc. *Held*, that each locality to be reclaimed should be designated as a district by number, and the bonds should show on their face that they are liens on the property in the district having the number of the district corresponding with the number on the face of the bonds.

Application on the relation of the state, by C. B. Nolan, Attorney General, against T. C. Marshall and others, members of the State Arid Land Grant Commission, for a writ of prohibition. Denied.

Statement of the case by the justice delivering the opinion.

This is an application made to this court for a writ of prohibition. As will be seen from the title of the cause, the application is made in the name of the State, by the Attorney General, against the defendants, who compose the members of the State Arid Land Commission.

It appears that some time in the year 1897 the Arid Land Commission, acting under authority of Section 3532, p. 182, of the Session Acts of 1897 of the General Assembly of the State of Montana, creating such commission, for the purpose of reclaiming the arid lands granted to the state by acts of congress, which section gives to the commission "full power and authority by resolution to enact such rules for its government, and the carrying into effect of this act, as to them may seem just and reasonable, and not inconsistent with law," adopted

the following resolution: "If at the source of supply and point of diversion there shall appear to be waters in excess of the amount necessary for the irrigation of lands selected and proposed to be reclaimed under the Carey act, then, and only in that event, any individual or corporation may contract with the party who may by this commission and under the law be selected to construct the state canal, to enlarge and extend such canal or water system for conveying to his or its respective lands such excess waters, and such party shall have the exclusive right to contract with such individual or corporation, and any and all charges and expenses incurred on behalf of such additional construction shall be paid by such individual or corporation, and all such contracts shall be entered into prior to the beginning of the actual construction, and be done according to the plans and specifications, and under the superintendence of this commission; and the individual or corporation so contracted with shall be furnished such excess water by this commission without any additional cost for water rights, except the annual rental or tolls charged according to law. Such individual or corporation shall be credited and charged with an amount per acre equal to the sum assessed against similar lands adjoining and belonging to the district."

It appears from the affidavit of the Attorney General that, in pursuance of such resolution, the commission selected a large body of land in Yellowstone county, for the purpose of reclaiming the same under the law, and designated the land so selected as "District No. 1." This affidavit further shows that there are about 10,000 acres of land in the district which may be reclaimed by the commission for the state under the congressional legislation known as the "Carey Act," and that there are about 15,000 acres belonging to the Northern Pacific Railroad Company and other parties; that the lands in said district are embraced within the limit of the land grant of the Northern Pacific Railroad Company, and that said railroad company owns each alternate section of the land therein; that all of the lands in the district are arid lands, and require irrigation in order to reclaim them; and that the commission, in

selecting the lands in said district, only included the alternate sections not belonging to the railroad company as the only lands to which the state could acquire title under the provisions of the Carey act and acts amendatory thereof.   The Attorney General contends that all of the lands embraced within the exterior boundaries of the district should be included as a part of the district, whether they belong to the railroad company or to other parties.   The affidavit further alleges that the commission, in constructing the canal to carry water upon the lands embraced within said district, is only making provision for a ditch sufficiently large to supply water to irrigate the lands to which the state may acquire title under the Carey act, and is making no provision to supply water to the lands belonging to said railroad company and other parties.   The Attorney General contends in his affidavit and argument that the commission has no authority to constitute a district in which the railroad company owns each alternate section of the lands, or where other parties own lands therein; in other words, that the commission must select its lands in a section, called a "district," where the lands are free from the ownership of any corporation or person.   He further contends that the amount which the commission can expend in the reclamation of the land in such district is not sufficient for the purpose of reclaiming all the lands embraced within the district, and therefore that the commission has no power to select such lands and proceed under the law for the reclamation thereof. The affidavit further shows that it is the purpose and intention of the commission to enter into a contract with the Northern Pacific Railroad Company by which the railroad company will enter into a contract with the contractor selected by the commission for the building of the state canal to irrigate the lands in the district; that under such contract the railroad company will furnish moneys sufficient to so enlarge the ditch or canal that is to be constructed by the commission alone, with the funds at its disposal, as that the canal will furnish water sufficient to irrigate all the lands in the district.   It appears, also, by the affidavit, that the commission proposes

to issue bonds in accordance with the provisions of the law, and which are to express upon their face that they are only to be a lien upon such lands in the district, and the canal con-structed for the purpose of irrigating the same, as the state can acquire title to under the provisions of the Carey act. The application asks that the commission be prohibited—First, from establishing a district comprising sections of land de-tached from and not contiguous to each other; second, from constructing a canal or ditch of the capacity only sufficient to irrigate lands to which the state can acquire title under the Carey act; third, from making a contract with the Northern Pacific Railroad Company, or any other corporation or person, for the enlargement of the canal contemplated, so as to make the same sufficient to irrigate other lands than those to which the state may acquire title under the Carey act; fourth, from the issuing of bonds specifying upon their face that the lien thereof shall attach only to lands to which the state may ac-quire title under the provision of the Carey act, and the canal and water rights appurtenant thereto; and, fifth, from con-structing said canal so that the expense of the same would be in excess of $12.50 per acre. To this application for the writ of prohibition the commission filed a general demurrer. Under the issues thus tendered, this court is called upon to determine the powers of the commission under the law.

*C. B. Nolan,* Attorney General, in *pro per.*

*Donald Bradford* and *Wm. Wallace,* for Defendants.

PEMBERTON, C. J.—The extent of the powers of the State Arid Land Grant Commission, under the laws of the state en-acted to enable the state to secure the benefits to arise from the lands granted by the government of the United States by the Carey act and acts amendatory thereof, is a very import-ant question. The general government has by law made to the state conditionally a magnificent donation of lands. It is of the highest importance that the legislature of the state should make provision by law for performing the conditions

upon which the right of the people to acquire the lands thus donated depends. Our legislature, appreciating this important duty to the people, has been prompt in taking the necessary steps and providing the essential means for acquiring title to the arid lands granted, as said above, to the state. In the wisdom of the legislature, the creation of a commission, with full powers to perform and comply with the conditions imposed by congress as prerequisites to acquiring these lands, seemed the proper instrumentality to be used for this important purpose. The last Legislative Assembly, to effectuate this object, passed an act entitled "An act to amend Sections 3530, 3531, 3532, 3533, 3534, 3535, 3536, 3537, 3538, 3539, 3540, 3541, 3542, 3543, 3544, 3545, 3546, 3547, Article 2, Title 8, of the Political Code of the State of Montana, creating the State Arid Land Grant Commission and defining its powers and duties, and to add thereto Sections 3548, 3549, 3550, 3551, 3552, 3553, 3554, 3555, 3556, 3557, 3558, 3559, 3559a, 3559b, 3559c, 3559d, 3559e, 3559f.

To provide for the reclamation of arid lands granted to the State of Montana by acts of congress and to provide for the issuance of bonds and the appropriation of money for the carrying of this act into effect and the payment of expenses heretofore incurred and warrants heretofore issued by the State Arid Land Grant Commission." (Sess. Acts 1897, p. 180.) Section 3530 of the act is as follows: "That for the purpose of enabling the state to accept the offer of the United States, made in an act of congress approved August 18, 1894, entitled 'An act making appropriations for sundry civil expenses of the government for the fiscal year ending June 30, 1895, and for other purposes,' and as amended by an act of congress approved June 11, 1896; for the purpose of reclaiming the lands therein mentioned in accordance with the terms of said acts, a commission shall be and is hereby created under the name of the State Arid Land Grant Commission, which shall consist of five members, and they and their successors shall remain and continue to be such commission for all the purposes hereinafter provided." Section 3532 of the act pro-

vides, among other things, as follows : "The said commission shall have full power and authority by resolution to enact such rules for its government and the carrying into effect of this act as to them may seem just and reasonable and not inconsistent with law."

Section 3533 of the act provides : "That said commission shall have, and it is hereby given full power and authority to take all steps necessary to comply with all and singular the conditions of said act of congress, and of any and all amendment or amendments thereto, or other act or acts of congress pertaining thereto, to the end that the state may receive the full benefit and advantage accruing to it, through or by the terms of any congressional action."

It is evident that the Legislative Assembly intended to give, and did give, very extensive powers to the commission by these sections of the law. The question arises, what steps may the commission take, or what contracts may it enter into, "to the end that the state may receive the full benefit and advantage accruing to it, through or by the terms of any congressional action" by which the arid lands were intended to be donated to the state? It would seem that the only limitation imposed by this legislation on the extent to which the commission can go in their efforts to reclaim the arid lands donated to the state is that the steps taken, means used, or contracts entered into by the commission shall be for the benefit of the state. Tested by this standard, are the steps contemplated to be taken, and the contracts intended to be entered into, by the commission, as shown by the resolution set out in the statement, and alleged in the affidavit of the Attorney General, for the construction of a ditch to reclaim the lands in district No. 1, the specifying upon the face of the bonds to be issued to what the lien thereof shall attach, or shall not attach, etc., for the benefit of the state? Are these contemplated acts of the commission inconsistent with or prohibited by law?

It does not appear that the reclamation of the land to which the state might acquire title in District No. 1, under the con-

gressional legislation in question, by a proper contract with the Northern Pacific Railroad Company, will not be to the benefit and advantage of the state. Is, then, the making of such a contract as is contemplated by the commission with the railroad company inconsistent with or prohibited by law? Let us look at the circumstances and conditions that confront the commission in relation to these lands. The railroad company owns each alternate section of the lands in the district selected by the commission for reclamation. Congress enacted the Carey act and acts amendatory thereof, and our own Legislative Assembly passed the act under which the commission claims power to act, with full knowledge that the state could only acquire title to each alternate section of the arid lands in the state which lie within the limits of the Northern Pacific land grant; and, if it was not within the contemplation of these legislative bodies that the state might reclaim and acquire title to such alternate sections of land within the railroad land grant, the right to acquire the same should have been excluded. We are of the opinion that no such exclusion was desired or intended by congress or the legislature of this state. If the right of the state to acquire lands thus situated be denied, it will be difficult, if not impossible, for the state to obtain the full substantial benefits intended to be granted by the Carey act; for we very much doubt if the commission could find any considerable bodies of arid lands in the state, where water and other facilities for reclamation could be found, without encountering the claims of the Northern Pacific Railroad Company, or some other corporation, or the possession and rights of individuals. So we cannot agree with the contention that the state may not by its commission take the necessary steps to reclaim arid lands in localities where the Northern Pacific Railroad Company, or any other corporation or individuals, own alternate sections or other parts of the lands in such localities. To so hold would be to establish a rule that would be detrimental in the highest degree to the interest and welfare of the state.

In their arguments counsel have shown considerable inter-

est and anxiety concerning the question as to what property the lien of the bonds provided for in Section 3541 of the act under consideration shall attach; also as to what powers the commission shall have and exercise under Section 3546, and other sections of the act, in the event it is held it has the power to make the contracts it contemplates making with the railroad company for the reclamation of the lands in District No. 1. But these sections of the law, as does the entire act, contemplate the attaching of liens specified in the bonds to be issued by the commission, and the doing of things by the commission enumerated especially in Section 3546, under circumstances and conditions entirely different from those surrounding the actions of the commission as shown by the record in this case. The entire law, including the sections upon which special emphasis is laid, has reference to ditches already constructed and a district of arid lands already reclaimed by the commission, where no corporation or individual owns any part of the lands included in the district or locality. In such case the lien of the lands attaches to property, and the powers of the commission refer to rights of the state already acquired. In the case at bar we are looking forward to the action which the board contemplates doing in the future,—to a condition or state of facts not covered by the terms of the law as we find it in the statutes. The question is, then, not what the commission may do with reference to the condition and state of affairs provided for by the terms of the law, but what may it do "to the end that the state may receive the full benefit" of the congressional legislation under discussion, in view of the conditions and circumstances confronting and surrounding it, which are not provided for by the terms of the statute? Are the things which the commission contemplates doing—are the contracts it intends to make, as is charged, in order to reclaim the lands in question—inconsistent with or prohibited by the law? This is the question we are called upon to answer, as we understand the case. We find nothing in the letter or spirit of the law to prevent such action on the part of the commission. The Legislative Assembly has given

the commission very extensive powers in the premises, as we think for the wise and patriotic purpose of developing and promoting the resources and welfare of the state, and we would hesitate long before we could consent to such restricted construction of the law as would thwart the high purpose of the legislative branch of the state.

The restriction placed upon the action of the commission by the law is that whatever steps it shall take, whatever means it shall employ, and whatever contracts it shall make with any corporation or person, in order to reclaim the arid lands of the state, such steps, such means and such contracts shall be for the benefit of the state. Under this test, then, if the commission shall take any steps, adopt any means, or make any contracts with any one in the premises that shall not be found to be for the benefit of the state, upon proper investigation, then all such acts of the commission would be held to be void, as done without authority of law. This restriction should be strictly enforced. Whatever contracts the commission shall make, under conditions and circumstances presented by this record, with any corporation or person, should be in writing, properly acknowledged and certified, and placed of record; and in such contract the right of the state to supervise the construction of canals and ditches, the right of the state to control and maintain the same for all time, and the right to proper liens on such ditches and canals and improvements for the cost of construction and maintenance thereof, should and must be fully provided for and preserved in such contracts, so that the assigns of such corporations and persons shall take any interest that may be acquired in the same subject to the rights of the state. In other words, by the terms of the contracts that the commission shall enter into with any corporation or person, the rights of the state to construct, control and maintain the ditches and canals, and a lien on all the property allowed by law, shall be fully preserved; and, unless so preserved, such contracts could not be held to be for the benefit or best interests of the state.

The holding that the commission may make the contracts

contemplated with the railroad company does away with the objection that the reclamation of the lands to which the state may acquire title will cost an amount in excess of that allowed by law. Under such contract, the commission would not be required to expend over $125,000, the amount it is conceded it may lawfully expend to reclaim the lands in the district to which the state can acquire title.

There has been considerable discussion by counsel as to what importance should be attached to the word "district" as used in the statute. We think it was the intention of the legislature that the commission should designate each locality or section where land is to be reclaimed as a district, giving it a number, thereby distinguishing it from other localities or sections where the work of reclamation is to be prosecuted by the commission, so that the bonds to be issued for each district, as required by law, may show on their face to what district they belong, and upon the property of what particular district they are to be a lien. The State Treasurer is also required to keep an account with each district. The convenience of all concerned can be best subserved and confusion avoided by designating each locality or section to be reclaimed as a "district" by a number, and then let the bonds show on their face that they are liens on the property in the district having the number of the district corresponding with the number on the face of the bonds. (Arid Land Act, §§ 3536, 3541, 3543.) Further than this we are unable to discover that any importance should be attached to the question of districts.

Having fully considered the questions presented in this proceeding, we are of the opinion that it has not been shown that the commission has exceeded, or that it will exceed, the powers conferred upon it by law, by doing the things charged in the affidavit of the plaintiff, which are fully set out in the statement; nor has it been shown that the making of the contracts contemplated by the commission, as shown by the resolution in the statement, and allegations contained in plaintiff's affidavit, are inconsistent with or prohibited by law. We are

of the opinion that the commission may make the contem
plated contracts for the purpose of reclaiming the arid lands
the state may acquire under the Carey act, provided, always,
that such contracts are so made and carried out as to preserve
all the rights of the state, to the end that the state may re-
ceive the full benefit of the congressional legislation granting
to it the lands in question.   If the contracts come within this
rule, they will, we think, be valid as authorized by law; other-
wise they will be void.   The writ is therefore denied.

HUNT and PIGOTT, JJ., concur.